729 So.2d 944 (1998)
Douglas SMITH, Thomas Brandon, et al., Petitioners,
v.
SANTA ROSA ISLAND AUTHORITY, and Gary Work Land Trust, Respondents.
No. 97-4624.
District Court of Appeal of Florida, First District.
August 25, 1998.
David A. Theriaque of David A. Theriaque, P.A., Tallahassee, for petitioner.
Mark J. Proctor of Levin, Middlebrooks, Thomas, Mitchell, Green, Echsner, Proctor & Papantonio, P.A., Pensacola; Donald E. Hemke and Stephen L. Walker of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Pensacola, for respondent Gary Work Land Trust.
Robert L. Crongeyer and Mary Jane Thies of Beggs & Lane, Pensacola, for respondent Santa Rosa Island Authority.
PER CURIAM.
Petitioners seek certiorari review of two orders of the circuit court sitting in its appellate *945 capacity, one denying a motion to disqualify and the other denying a petition for writ of certiorari to review a decision of the Santa Rosa Island Authority. Concluding that the circuit judge should have granted the motion to disqualify, we grant the petition for certiorari, vacate both orders, and remand for appointment of a new judge to hold further proceedings upon the petition for review of the decision of the authority.
In 1997, the Santa Rosa Island Authority (SRIA) conducted a quasi judicial hearing to consider an application of Gary Work Land Trust (GWLT), filed by Allen Levin d/b/a Island Resorts, for amendment of a lease option agreement to develop acreage on Pensacola Beach. Following the lengthy hearing, the SRIA board voted to approve GWLT's request, and a development lease agreement was thereafter executed. Petitioners sought review of the SRIA's decision by way of a petition for writ of certiorari filed with the circuit court.
At the outset of oral argument on the petition for writ of certiorari, conducted September 22, 1997, the circuit judge announced on the record:
I want all of the chips and the cards on the table.... I just want everybody to know, because you're not from hereI don't know you. I know most of theseveral other people. I know Mr. Levin. Mr. Levin was born and raised in Pensacola, and so was I. I know him. I know his brothers who are lawyers. Mr. Levin is not. .... I don'tbecause it is the type of case it is and we really don't get into a question of, as I understand it, credibility of witnesses, where we're going to be trying the case like, you know, from a credibility issue, it doesn't bother me too much. But if we had a situation coming in here where people were testifying that I knew and it comes down to credibility of who ran the red lightyou know what I meanI would have some problems with it.
I'll be honest with you. I've known Mr. Levin for a long time. I don't know anything about him bad or anything of that nature..... So if that's going to make a difference, I want you to know it.
* * * * * *
I had no ideaMr. Levin is probably further removed from me, quite candidly, than, for instance, Mr. Gray, who I've known ever since high school, quite honestly..... I just want to say that if that's going to create a problem, then it creates a problem. If it doesn't create a problem, then because we're not really getting into the credibility of witnesses, because they are parties and it's going to affect them, I think everybody should know that.
The judge then stated he would answer any questions from counsel regarding his knowledge of Mr. Levin, adding that he also personally knew attorney Boyles, who sat on the SRIA board. Counsel for petitioners inquired of the judge whether he felt comfortable "ruling on issues that involve millions of dollars one way or the other to the Levin family, directly to the Levin family, and to the Levin law firm." The judge responded that he frequently rendered decisions in cases handled by the Levin firm. The judge then added that he also knows attorney Gary Work. Following a recess during which counsel discussed the issue with those petitioners who were present at the hearing, counsel announced that his clients were concerned about the ability of the court to hear this matter in light of the long-term knowledge and history with the Levins in Pensacola. Counsel requested the judge to disqualify himself from reviewing the petition. Following further discussion, the judge clarified that he did not travel in the same social circles as Levin and his brothers, and stated that, with regard to rendering a decision that would impact Levin financially, "I don't have any particular heartburn either way about it." The judge reiterated that he would only have a problem deciding credibility issues. Following a renewed request for disqualification, the court orally ruled as follows:
I've made my disclosure. That's all I can do. I'm going to go ahead and hear the oral arguments. I'll give you an opportunity, Mr. Theriaque, to file a Motion for Recusal. Of course, you know and I know on a Motion for Recusal it's not to make a determination of the truth or the falsity of it, but it's whether or not it's legally sufficient. If it's legally sufficient, you know, *946 it's legally sufficient. If it's not legally sufficient, it's denied. If it is legally sufficient, it's granted. That's all I can say.
A written motion to disqualify was filed shortly thereafter. On November 5, 1997, over a month after oral argument, the court entered an order denying the motion to disqualify, finding it to be legally insufficient. On the same date, the court entered an order denying the petition for writ of certiorari.
Section 38.10, Florida Statutes, gives litigants the substantive right to seek disqualification of a judge. Rule 2.160, Florida Rules of Judicial Administration, sets forth the procedure to be followed in the disqualification process. Respondents, urging that this rule and statutory provision and related case law are applicable only to judges sitting in their capacities as trial judges, argue that the disqualification of an appellate judge is a matter which rests largely within the sound discretion of the judge involved. However, rule 2.160(a), although entitled "Disqualification of Trial Judges," provides clearly that the rule applies to "county and circuit judges in all matters in all divisions of court." (Emphasis added.) As such, we find the rule applicable to a circuit judge considering a petition for writ of certiorari to review a decision of a county agency following a quasi-judicial hearing.
Thus, the task before us on appeal from the denial of the motion to disqualify is to determine the legal sufficiency of the motion based on whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial proceeding. Hayes v. State, 686 So.2d 694, 695 (Fla. 4th DCA 1996), rev. dismissed, 691 So.2d 1081 (Fla.1997). In this regard, we apply the test to be used in reviewing a motion for disqualification, as set out by the supreme court in MacKenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332 (Fla. 1990). The court held that the facts alleged in a motion to disqualify need only show a movant's well-grounded fear that the movant will not receive a fair trial. Id. at 1334. In determining whether the allegations are sufficient, the facts must be taken as true and must be viewed from the movant's perspective. Id. Whenever an allegation is raised which questions the judge's neutrality as to one of the parties, the judge can only pass on the legal sufficiency of the allegation; if it is legally sufficient, the trial judge must grant the motion and proceed no further. Id. at 1339.
Herein, the written motion to disqualify alleged that the judge's disclosure at the beginning of oral argument established that he has extensive personal knowledge of the Levin family and law firm, that he is familiar with Gary Work for whom GWLT is named, that he also knows Mr. Boyles whose failure to recuse himself from the SRIA board was the basis for one of the legal arguments raised in the petition for writ of certiorari, and that he admitted that he would be uncomfortable making credibility determinations regarding certain members of the Levin family. It was also alleged that the record clearly established that members of the Levin family and law firm have a personal financial stake in the outcome of the litigation, that Fred Levin owns 27% of GWLT, that Allan Levin owns 11% of GWLT, and that two pension plans for the Levin firm own 7% of GWLT. Finally, it was alleged that these facts established grounds for a reasonable fear that the judge should not hear the matter.
Respondents assert that the allegations that the judge "had extensive personal knowledge of the Levin family and the Levin law firm" and that he was "familiar with Gary Work" and that he "knew" Mr. Boyles, are not enough to prompt a reasonably prudent person to fear that he could not get a fair and impartial hearing. We agree that allegations of mere "friendship" with an attorney or an interested party have been deemed insufficient to disqualify a judge. See e.g., MacKenzie, supra at 1338 (allegations of friendship, member of same church, neighbors, former classmates, are legally insufficient to show that a judge is biased in favor of a litigant); Adkins v. Winkler, 592 So.2d 357, 360 (Fla. 1st DCA 1992)(fact that judge had longstanding relationship with attorney legally insufficient for recusal). The allegations in this case, however, involve something more. The judge specifically acknowledged *947 that he would be uncomfortable making credibility determinations regarding certain members of the Levin family. Although it does not appear to us that the outcome of the proceedings below in any way rested upon the credibility of any of the individuals involved, we nevertheless are compelled to conclude that the judge's comments were sufficient to lead a reasonably prudent person to believe that other rulings might be affected by his admission, and hence, to fear that the proceedings would not be entirely fair and impartial. Cf. Fogan v. Fogan, 706 So.2d 382 (Fla. 4th DCA 1998)(granting petition for writ of prohibition upon a finding that judge should have granted motion to disqualify in dissolution proceeding where his statement that he could not punish either of the parties if there were grounds to do so amounted to an admission that he could not be fair and impartial). It is not a question of how the judge feels; it is a question of what feeling resides in the movant's mind, and the basis of such a feeling. See State ex rel. Morgan v. Baird, 660 So.2d 328, 330 (Fla. 2d DCA 1995). The judge herein, after admitting he would have difficulty ruling on matters of credibility with regard to certain individuals having a stake in the outcome of the case, under an abundance of caution should have disqualified himself after being requested to do so.
Accordingly, we grant the petition for writ of certiorari, reverse the order denying the motion to disqualify, vacate the order upholding the decision of the authority, and remand with instructions that the petition for writ of certiorari to review the decision of the SRIA be assigned to a different judge.[1]
ALLEN and WOLF, JJ., and SMITH, LARRY G., Senior Judge, concur.
NOTES
[1] In light of our disposition herein, we need not reach the merits of the order denying the petition for writ of certiorari.