492 So.2d 858 (1986)
Carolyn Tonkins BUCKINGHAM, Appellant,
v.
Stephen K. BUCKINGHAM, Appellee.
No. BK-72.
District Court of Appeal of Florida, First District.
June 25, 1986.
Rehearing Denied September 5, 1986.
*859 Ben H. Wilkinson and William D. Hall, Jr. of Pennington, Wilkinson, Dunlap, Butler & Gautier, Tallahassee, for appellant.
Everett P. Anderson, Tallahassee, for appellee.
MILLS, Judge.
Carolyn Tonkins Buckingham (wife) appeals from an order granting in part and denying in part the husband's petition for modification of child support and visitation. We reverse in part and affirm in part, and remand for the taking of evidence on the parties' motions for attorney's fees.
On 7 February 1983, a final judgment was entered dissolving the marriage of these parties. Incorporated in that judgment was a stipulation of the parties which governed, among other things, child custody, visitation and support. Husband agreed to provide $450 per month in child support and was granted "liberal" and "approximately equal" visitation with the parties' then two-year-old son. Visitation rights were spelled out in some detail, the husband to receive eight overnight visits with his son each month, including midweek visits, and thirty days each summer; the latter provision had been resolved by the parties over time into a four-week summer visit.
At the time this judgment was entered, neither party contemplated that the custodial parent (wife) would leave Leon County. However, following her remarriage, wife moved to Orlando, Florida, necessitating long-distance travel whenever husband exercised his visitation rights. The parties initially resolved this difficulty by driving halfway between Tallahassee and Orlando to pick up and deliver the child; the husband occasionally conducted visitation in Orlando, bearing alone the associated travel expenses. These circumstances led to the instant petition for modification of child support filed by husband in July 1985 and requesting that the $450 amount be reduced by $250 to cover visitation expenses. Wife opposed this change with uncontradicted financial affidavits showing that she had no income of her own and that the child's needs exceeded by some $800 per month the $450 already being paid.
Aside from the effect on visitation of wife's relocation to Orlando, the child has reached school age, effectively eliminating the agreed-upon midweek overnight stays *860 with husband. The net result of this circumstance is that the child's visits with his father are reduced by approximately fifty days a year. It was on this ground that husband requested modification of summer visitation so that the child would be with him eight weeks instead of the agreed-upon four. The wife also opposed this change, alleging disruption of summer recreation lessons in Orlando and of custodial family vacations.
Prior to the October 1985 hearing on the petition, the parties filed a joint "statement of issues for trial." The summer visitation and child support issues were set forth, as were requests by each party for attorney's fees and costs. After presenting evidence as described above and of the close relationship enjoyed between husband and the child, each party rested, neither having submitted evidence on their requests for attorney's fees and costs. The court refused to receive such evidence after resting and later denied fees to both parties based on the lack of that evidence.
The final order was entered in November 1985. It granted a modification of summer visitation so that husband would have the child six weeks instead of four, but denied his request for modification of child support, finding that "husband has failed to sustain his burden of showing a substantial and material change in circumstances justifying reduction in direct monthly support of $450." However, under the separate heading of "Visitation Transportation Expenses," the order stated that, although the parties were free to agree between themselves to continue the practice of driving halfway to facilitate visitation, if they failed to do so, they were to arrange alternate commercial or private transportation to visit the site chosen by husband. Each party was required to bear one-half of the child's round-trip expense, or of husband's, if he elected to come to Orlando; in no case would wife's liability exceed one-half of the unaccompanied child's round-trip airfare between Orlando and Tallahassee.
We reverse the trial court's order with regard to "visitation transportation expenses." The court specifically held that husband had not carried his burden of showing a substantial and material change in circumstances so as to justify a reduction in the direct monthly support of $450. See Burdack v. Burdack, 371 So.2d 528 (Fla. 2d DCA 1979), accord Leone v. Weed, 474 So.2d 401 (Fla. 4th DCA 1985). In the face of the wife's affidavit that she had no income other than the child support to meet his sworn expenses of over $1200 per month, the court's action in this regard can be no other than a de facto reduction of the child support figure. In view of the holding that such a reduction was unsupported by the evidence, such action was error.
The modification of visitation is affirmed. It is true that, as wife argues, the movant for such modification must demonstrate a substantial change in circumstances and that the change will benefit the child's welfare. Perkins v. McKay, 460 So.2d 531, 532 (Fla. 2d DCA 1984) (emphasis in original). We cannot agree with her argument, however, that no evidence was presented as to the latter point. The original decree incorporated a stipulation that husband should have liberal visitation and approximately equal access to the child. To that end, the parties agreed to explicit times for visitation, including midweek overnight visits with husband. It was undisputed that these visits have been rendered impossible by the child's entry into school, but especially by his location in Orlando, since overnight visits would not be a problem in that regard if he were in Leon County. This circumstance reduces the child's access to his father by some 50 days a year and it is undisputed that the two enjoy a close relationship at this time. The reduction of access occasioned by the child's relocation, coupled with that relationship, sufficiently demonstrates that increasing visitation at other times of the year so as to make up this unanticipated deficit will "benefit the child's welfare" sufficiently to satisfy the Perkins standard.
*861 Finally, the trial court abused its discretion in refusing to hear evidence pertaining to the parties' motions for attorney's fees. A party should, in giving his evidence in chief, offer all evidence in support of his case, but he may always invoke the discretion of the trial court, after he has rested or after the close of the evidence by both parties, to allow reopening where this can be done without injustice to the other party. 55 Fla.Jur.2d Trial Sections 47 and 48; Dees v. State, 357 So.2d 491 (Fla. 1st DCA 1978).
In this case, each party knew of the other's motion, eliminating the possibility of unfair surprise; the proceeding was still convened when the motions were brought up for argument, therefore no inconvenience to the court or the parties would have resulted from consideration of the motions; and the court had not lost jurisdiction to consider them, as no final judgment had been entered. See Jackson v. Jackson, 390 So.2d 787 (Fla. 1st DCA 1980). Under these circumstances, the court abused its discretion in refusing to hear evidence on the motions for fees and costs. Its denial of those motions "for lack of evidence" was therefore error, and we reverse and remand for a proceeding confined to consideration of the parties' motions for attorney's fees and costs.
Affirmed in part, reversed in part and remanded.
WENTWORTH and NIMMONS, JJ., concur.